AO 91 (Rev. 11/11) Criminal Complaint (approved by AUSA Justin Ashenfelter)     22-08

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| DAVID DIXON | ) | Case No. 22-mj-138 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 15, 2021__ in the county of __Philadelphia__ in the __Eastern__ District of __Pennsylvania__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1),(b)(1)(B) | Distribution of 50 grams of more of a mixture and substance containing a detectable amount methamphetamine |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

/s/ Ryan Jones
*Complainant's signature*

Ryan Jones, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 28, 2022

s/ Richard A. Lloret
*Judge's signature*

City and state: Philadelphia, Pennsylvania     Hon. Richard A. Lloret, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Ryan Jones, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and currently assigned to the Philadelphia Field Office Squad Criminal 3, which investigates drug trafficking organizations. As a part of my official duties, I investigate criminal violations of the federal narcotics laws. I was previously assigned to the Chicago division where I worked gang investigations involving narcotics and firearms. I also spent two years with the Chicago Joint Terrorism Task Force as a bomb technician. I have received training and experience in narcotics smuggling and distribution investigations, including but not limited to, the means and methods used by traffickers to import and distribute narcotics, interdiction, smuggling methods, and the concealment and laundering of proceeds from illicit drug trafficking activities. During my employment with the FBI, I have participated in investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances. Furthermore, I have participated in numerous aspects of drug investigations including but not limited to: physical surveillance, electronic surveillance, debriefing of confidential sources, controlled purchases of controlled substances, court authorized interception of communications related to drug trafficking, the execution of search and arrest warrants, analysis of phone and financial records, and arrests of drug traffickers. I have debriefed confidential sources, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations. Additionally, I have spoken on numerous occasions with other experienced narcotics investigators concerning the methods and practices of drug traffickers and money launderers. Through these investigations, training and experience, and conversations with other

law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities.

2.  Based on my training and experience, I am familiar with the clandestine manner in which methamphetamine, cocaine, crack cocaine, heroin, fentanyl, and other controlled substances are manufactured, sold, distributed, and used. I am also familiar with prices, slang terminology, codes, and mechanisms used in association with the distribution and use of illicit narcotics. Through instruction and participation in investigations, I have become familiar with the manner in which narcotics traffickers conduct their illegal business and the methods, language, and terms used to disguise conversations regarding narcotics trafficking.

3.  The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other special agents and/or other law enforcement agents, as well as official reports of law enforcement. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant for DAVID DIXON, I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause for DIXON's arrest.

4.  As described in detail below, I submit there is probable cause to believe that DAVID DIXON has violated Title 21, United States Code, Section 841(a)(1), (b)(1)(B) (distribution of 50 grams or more of a mixture and substance containing a detectable amount methamphetamine).

**PROBABLE CAUSE**

5. Beginning in September 2020, the FBI opened an investigation into the drug trafficking activities of DIXON and others based on information received from a confidential source ("CS-1").[1] DIXON was identified as a methamphetamine distributor operating in the Philadelphia area of Pennsylvania. CS-1 relayed that DIXON typically sold pound quantities of methamphetamine, with CS-1 gaining this knowledge first-hand, having purchased methamphetamine from DIXON in the past. The information provided by CS-1 in connection with the current investigation has been corroborated by surveillance, police reports, witness interviews, Department of Motor Vehicle records, law enforcement databases, telephone/communication records, other sources, information gathered from social media and controlled purchases[2] of illicit narcotics. During the course of the investigation, investigators utilized several different investigative techniques to determine the scope of DIXON's drug trafficking activities.

6. On April 14, 2021, CS-1 made a consensually recorded telephone call, in the presence of law enforcement, to DIXON who CS-1 knows by the nicknames "Dickwu" or "Dawood," previously identified by law enforcement as DIXON, at phone number (267) 441-7505. The purpose of the phone call was to set up a controlled purchase of one pound of crystal

---

[1] CS-1 is cooperating with law enforcement in exchange for court consideration at federal sentencing following her/his possession of controlled substances with intent to distribute. CS-1's information has proven to be reliable and credible. CS-1 is familiar with drug trafficking and drug use through her/his personal experience. CS-1 has been cooperating with law enforcement since her/his arrest in summer 2020, and her/his information has led to several controlled purchases of methamphetamine in Pennsylvania and law enforcement's seizure of controlled substances.

[2] A controlled purchase is a mechanism in which investigators utilize an informant to purchase evidence from a suspect. The entire activity is controlled by investigators, to include, directing the informant, physical surveillance and utilizing government funds to conduct the transaction.

3

methamphetamine between CS-1 and DIXON.  Upon placing the call, CS-1 asked DIXON if he was "good" for the following day.  DIXON replied, "We should be good for tomorrow."

       7.       On April 15, 2021, CS-1 exchanged text messages with DIXON, who was using another phone with telephone phone number 267-562-4082.  The messages confirmed that DIXON would be meeting CS-1 at a pre-determined meeting location in Philadelphia later that day.

       8.       Prior to the controlled purchase operation, CS-1 and the meeting location were searched for contraband with negative results by your affiant and FBI Task Force Officer ("TFO") Greg Stevens.  Your affiant provided CS-1 with $5,500 in FBI funds to conduct the purchase of methamphetamine from DIXON.  CS-1 was also provided with audio/video recording equipment and a transmitter to record the transaction with DIXON.

       9.       At approximately 2:20 p.m., CS-1 received a picture and text message from DIXON on telephone number 267-562-4082.  The message stated DIXON was on his way to meeting location but was blocked by a truck.  Physical surveillance was set up in the area of the meeting location in Philadelphia.  At approximately 2:40 p.m., law enforcement observed DIXON operating a Ford F-150 truck bearing Pennsylvania license plate ZLW-8353 in the vicinity of the meeting location where CS-1 was waiting for DIXON.  One minute later, DIXON exited the truck and entered the main door of meeting location.

       10.       Approximately 10 minutes later, law enforcement observed DIXON leaving the meeting location, returning to the Ford truck and driving out of the area. After DIXON left, your affiant and TFO Stevens again met with CS-1 and collected the recording equipment and transmitter.  At that time, your affiant collected a large, clear plastic bag containing a quantity of crystal methamphetamine from CS-1.  CS-1 also returned $1,500 of unused funds. Your

affiant and TFO Stevens searched CS-1 and the meeting area with negative results for contraband.  The drug evidence was determined to weigh approximately one pound and was then processed by TFO Stevens and sent to Philadelphia Police Department's ("PPD") drug laboratory for further testing.  Before submission to the PPD laboratory, TFO Stevens conducted a field test of the substance purchased from DIXON, yielding a positive result for the presence of crystal methamphetamine.

11. TFO Stevens and your affiant then debriefed CS-1 about the meeting with DIXON.  CS-1 explained that upon DIXON's arrival to the meeting location, DIXON retrieved the quantity of crystal methamphetamine from his pants pocket, which was contained inside of a clear ziplock bag, and placed it on the kitchen counter.  CS-1 then laid out $4,000 of the FBI buy money on the kitchen counter.  DIXON collected the money and placed it in his pocket without counting it.  DIXON and CS-1 then engaged in brief conversation about conducting future drug transactions before DIXON departed CS-1's location.  The audio/video recorder confirmed these events upon a later review by your affiant.

12.     Based upon the aforementioned facts stated herein, I respectfully submit there is probable cause to believe that DAVID DIXON has violated Title 21, United States Code, Section 841(a)(1), (b)(1)(B) (distribution of 50 grams or more of a mixture and substance containing a detectable amount methamphetamine).

Respectfully submitted,

/s/ Ryan Jones
Ryan Jones, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January 28 2022

s/ Richard A. Lloret
HONORABLE RICHARD A. LLORET
UNITED STATES MAGISTRATE JUDGE