**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-64 |
| DAVID DIXON | : | |

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT
## EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by its attorneys, Jacqueline C. Romero, United States
Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter and J. Jeanette Kang,
Assistant United States Attorneys, hereby files its Motion *in Limine* to Admit Evidence as
Intrinsic to the Crimes Charges or, Alternatively, Under Federal Rule of Evidence 404(b).

WHEREFORE, for the reasons stated in the accompanying memorandum of law, which
is incorporated here by reference, the United States of America respectfully requests that the
government's motion be granted and the Court enter an order that the testimony at issue may be
admitted at trial pursuant to appropriate limiting instructions.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney

/s/ Justin Ashenfelter
JUSTIN ASHENFELTER
J. JEANETTE KANG
Assistant United States Attorneys

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 22-64** |
| DAVID DIXON | : | |

### GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION *IN LIMINE* TO ADMIT EVIDENCE THAT IS INTRINSIC OR, ALTERNATIVELY, UNDER FEDERAL RULE OF EVIDENCE 404(b)

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Justin Ashenfelter and J. Jeanette Kang, Assistant United States Attorneys for the district, seeks a pre-trial ruling that it may admit in its case-in-chief the following evidence because it is not only intrinsic to the charged conduct but also permitted under Federal Rule of Evidence 404(b): evidence concerning a confidential informant's prior relationship with the defendant which included illegal methamphetamine transactions, as well as the defendant and informant unpacking an ottoman in the defendant's apartment that contained a large quantity of methamphetamine several months before the defendant's arrest.

The government represents as follows:

## I.      BACKGROUND

### A.   The Investigation

Beginning in September 2020, the FBI opened an investigation into defendant David Dixon's drug trafficking activities based on information received from a confidential source

("CS-1").[1]   The defendant was identified as a methamphetamine distributor operating in the Philadelphia area. CS-1 relayed that the defendant typically sold pound quantities of methamphetamine, with CS-1 gaining this knowledge first-hand, having purchased methamphetamine from the defendant in the past.

During the course of the investigation, investigators utilized several different investigative techniques to determine the scope of the defendant's drug trafficking activities. Through surveillance and other methods, investigators identified the Apartment 8H of the Park Plaza Condominiums located at 3900 West Ford Road in Philadelphia, Pennsylvania ("the Apartment") as a location where the defendant routinely visited several times a week and appeared to have exclusive access with the use of a key.

Additionally, investigators utilized another confidential source ("CS-2")[2] to conduct a controlled purchase of methamphetamine from the defendant to gather additional evidence related to his drug trafficking at the Apartment. The FBI then established a pattern of activity for the defendant and the manner and means by which he utilized his home in Delaware (60 Harvest Court in Smyrna) and one of several vehicles (namely, a dark colored Buick sedan), to facilitate his drug trafficking.

On an almost daily basis, surveillance revealed that the defendant routinely left his Delaware home in the late morning or early afternoon hours, and then drove to West Philadelphia. He would then routinely visit the Apartment, and thereafter make stops across

---

[1] CS-1 will not be testifying at trial in this matter.

[2] CS-2 is cooperating with law enforcement in exchange for court consideration at the sentencing phase of her/his federal case. CS-2 was detained by FBI agents in late 2021, when agents found CS-2 in possession of a large quantity of controlled substances among other contraband. CS-2's information has proven to be reliable and credible. In the event the Court grants the instant motion, CS-2 will testify at trial in this matter.

West Philadelphia and the surrounding areas before returning home to Delaware. The defendant is not a registered occupant of the Apartment yet he has a key to the unit and, during several surveillance operations conducted by law enforcement over the course of the investigation, no one else had been observed accessing the unit. Further, the defendant paid rent directly to the owner of the Apartment by transferring him money from his bank account to the owner's account.

### B.   Controlled Purchase of Methamphetamine on January 19, 2022

On January 19, 2022, the FBI installed a covert camera in the common hallway area of the 8th floor of the Ford Road Apartment building to record and capture images of the defendant entering and exiting the door to the Apartment.   In summary, during a controlled purchase operation that day, the defendant left his home in Delaware while driving his Buick in accordance with his usually observed habits and travelled to the Apartment where he retrieved 5 pounds of methamphetamine which he later sold to CS-2, and then visited the above-mentioned locations in West Philadelphia before returning to the Apartment. The covert camera installed on the 8th floor captured the defendant visiting the Apartment immediately before meeting the informant, and then leaving with a bag that he eventually transferred to the informant, which bag contained methamphetamine.

Prior to meeting with the defendant, CS-2 met with FBI in Philadelphia. There, the defendant and CS-2 arranged their meeting time and location over cellular phone. Prior to meeting CS-2, the defendant was observed by law enforcement parking his Buick in the vicinity of the Park Plaza Condominiums. Several minutes later, the defendant entered the building. At approximately 6:02 p.m., the defendant entered the Apartment using a key. While

3

inside the Apartment, CS-2 received text messages from the defendant asking, "How we looking[?]," and then a minute later stating "On [my] way." Several minutes later, the defendant exited the Apartment carrying a dark colored gym bag. He was observed putting the gym bag inside Buick, entering the driver's seat, and then driving away front the Park Plaza Condominiums. The defendant was followed by surveillance units to the pre-determined meeting location in Philadelphia where CS-2 was waiting. The defendant then sold approximately 5 pounds of methamphetamine to CS-2 in exchange for $10,000. During their meeting, CS-2 and the defendant engaged in conversation about drug trafficking and money laundering, with the defendant stating, "Remember that thing we broke open that time? In one of them." CS-2 later advised law enforcement that the defendant was referring to an ottoman-style piece of furniture that the defendant had used to conceal approximately 30 pounds of methamphetamine several months earlier when CS-2 purchased 10 pounds of methamphetamine from the defendant.

After CS-2 and the defendant parted ways, later that evening surveillance units observed that the Buick was again parked in the vicinity of the Park Plaza Condominiums, at which time the defendant entered the building and went to the Apartment.    Several minutes later, the defendant exited the building and re-entered the Buick.

**C.**   **Search Warrant Execution at the Apartment**

Based upon these events, the FBI obtained federal warrants to search the Apartment and the defendant's home in Delaware for evidence of drug trafficking, money laundering, and weapons possession.    At approximately 6:00 a.m., on February 2, 2022, FBI agents executed the warrants. The defendant was located at his home in Delaware. The Apartment was

unoccupied at the time. It contained men's clothing and men's sneakers. It was sparsely decorated and, based upon the level of cleanliness and the items contained therein, it appeared obvious that a man had been spending time there. Agents recovered: approximately 32 pounds of methamphetamine and a package of suspected psilocybin mushrooms in an ottoman-style piece of furniture in the living room; a loaded .40 caliber pistol in a night stand in the bedroom; approximately $150,000 in U.S. currency (approximately $9,700 was the FBI's pre-recorded buy money CS-2 used to purchase the methamphetamine from the defendant on January 19, 2022) stored in two night stands in the bedroom; a digital scale, Inositol and other commonly used cutting agents for drug distribution, and a vacuum heat-sealer in the kitchen.

**D.   The Indictment**

On February 24, 2022, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging the defendant with four counts: possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A) (Count One); maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a) (Count Two); possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count Three); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four).

**E.   Evidence Sought to be Introduced at Trial**

As detailed below, the government submits that the defendant and CS-2 had a long-standing relationship that revolved around drug trafficking; they discussed criminal activity such as the distribution of drugs and money laundering; and on at least one occasion they engaged in a drug transaction together that was during the course of a controlled purchase operation

conducted by the FBI. CS-2 would testify that he had previously visited the Apartment and assisted the defendant in unpacking an ottoman-style piece of furniture filled with methamphetamine that was consistent with the ottoman in the Apartment that contained the approximately 32 pounds of methamphetamine on the day of the defendant's arrest.

Accordingly, the government requests that it be permitted to introduce evidence of the defendant's prior criminal activity with CS-2 as well as CS-2's knowledge about the defendant's practice of concealing methamphetamine inside of an ottoman-style piece of furniture inside the Apartment. This evidence provides relevant background information for the jury, and it explains the defendant's (1) intent to distribute methamphetamine, and (2) his knowledge that the methamphetamine and money used by CS-2 to purchase methamphetamine as well as the firearm were concealed inside the Apartment – both of which are intrinsic to the crime of possession with intent to distribute controlled substances and also permissible under Rule 404(b).

## II.   ARGUMENT

### A.   Evidence Of The Relationship Is Intrinsic, Not Extrinsic, To The Defendant's Possession Of Methamphetamine And His Intent To Distribute It.

As a preliminary matter, because the defendant's relationship with CS-2 is germane to the government's case-in-chief, evidence of that relationship – including drug transactions committed pursuant to that relationship – is intrinsic to the charges and not necessarily extrinsic, the latter of which requires admission under Rule 404(b). The trust reposed in CS-2 by the defendant explains why the defendant invited CS-2 into the Apartment to help him disassemble an ottoman containing methamphetamine and then continued in his drug-related relationship with CS-2 in the days leading up to the defendant's arrest. The government must prove that the defendant knew the drugs were in the Apartment and that he intended to sell those drugs. CS-2

had been in the Apartment and seen methamphetamine there and packaged in an identical way to the drugs stored and concealed inside of the apartment when the warrant was executed there. As such, admission of this evidence under Rule 404(b) may not be necessary.[3] Nevertheless, in an abundance of caution, the government explains its reasons why the evidence is also admissible under Rule 404(b) in the event that the evidence is deemed by the Court to be extrinsic to the crimes charged.

### B. Rule 404(b) and Guiding Principles

Federal Rule of Evidence 404(b) states:

(b) Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case[4], the prosecutor must:

    (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

---

[3] If evidence is "intrinsic" to the charged offenses, it is not subject to Rule 404(b) analysis. *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010). "[C]ourts . . . exempt intrinsic evidence from application of Rule 404(b) on the theory that there is no 'other' wrongful conduct at issue; [and] the evidence is admissible as part and parcel of the charged offense." *Id.* The "intrinsic" label is reserved "for two narrow categories of evidence": "[f]irst, evidence is intrinsic if it 'directly proves' the charged offense," and "[s]econd, uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." *Id.* at 249 (internal quotations omitted).

[4] As of the date of this filing, the defendant has not requested that the government provide notice of any evidence arguably within the scope of Rule 404(b). Nonetheless, in an abundance of caution, the government herein affirmatively informs the Court of its intention to use evidence which may fall within the scope of Rule 404(b).

(B) do so before trial -- or during trial if the court, for good cause, excuses lack of
pretrial notice

Rule 404(b) applies to evidence of wrongful acts that are "extrinsic" to the charged

offense. Rule 404(b) provides that while evidence of other crimes, wrongs, or acts is not

admissible to prove the character of a person in order to show conformity therewith, such

evidence may be used for other purposes; indeed, such evidence shall be admitted if relevant for

any other purpose than to show a mere propensity or disposition on the part of the defendant to

commit the crime. *See United States v. Long*, 574 F.2d 761, 765 (3d Cir.1978), *cert. denied*, 439

U.S. 985 (1978). "In *Huddleston v. United States*, 485 U.S. 681 (1988), the Supreme Court set

out a four part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper

purpose; (2) it must be relevant; (3) its probative value must outweigh its potential for unfair

prejudice; and (4) the court must charge the jury to consider the evidence only for the limited

purposes for which it is admitted." *United States v. Givan*, 320 F.3d 452, 460 (3d Cir. 2003).

Further, Rule 404(b) makes no distinction between acts prior to and subsequent to the charged

conduct. *See United States v. Bergrin*, 682 F.3d 261, 281 n.25 (3d Cir. 2012).

**C.  The Evidence is Admissible Under Rule 404(b)**

**1.  The evidence is necessary to show the relationship between the defendant
and CS-2.**

CS-2's testimony will cover the events leading up to the FBI's investigation of the

defendant and his role as a confidential informant in the case. It will also include how he knows

the defendant and their history together, such that the defendant entrusted CS-2 to assist him in

disassembling the ottoman-style piece of furniture containing methamphetamine. Part and parcel

of their relationship includes CS-2's first-hand knowledge that the defendant was a drug

trafficker who had sold him methamphetamine on previous occasions; indeed, they had engaged in the exchange of money for drugs on January 19, 2022 during the controlled purchase operation supervised by the FBI. Hence, this evidence is admissible under Rule 404(b) to prove the defendant's intent and knowledge, a specifically approved basis of admissibility under the Rule.

Such evidence shows the relationship and connection between CS-2 and the defendant and provides relevant background for the jury as to how they were familiar with one another, how they built a relationship through criminal activity, and how the CS-2 was in regular contact with the defendant for leading up to the search warrant execution. The evidence also details how prerecorded buy money used by the FBI to purchase the methamphetamine from the defendant on January 19, 2022 ended up in the nightstands of the Apartment – it was CS-2 who paid money to the defendant to purchase a large quantity of methamphetamine. Without this testimony, the trial evidence would simply focus on the warrant execution at the Apartment, in which the defendant was not located, at the time FBI agents conducted their search.

The Third Circuit has traditionally held that extrinsic evidence of prior criminal activity is admissible under Rule 404(b) to show the relationship between a witness and a defendant. *See, e.g.*, *United States v. Butch*, 256 F.3d 171 (3d Cir. 2001) (allowing witness in pharmaceutical theft case to testify as to defendant's prior participation in identical theft); *see also United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982), *cert. denied*, 462 U.S. 1134 (1983) (holding that evidence may be introduced "to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme"). To that end, Rule 404(b) evidence may

9

be offered to show the pertinent background of the offenses and to establish the relationship among the offenders. The Third Circuit in *Butch* reaffirmed the principle that 404(b) evidence may be introduced "to provide necessary background information, to show an ongoing relationship between [the defendant and an accomplice or co-conspirator], and to help the jury understand the co-conspirator's role in the scheme." *Id.* at 176 (citing *Simmons*, 679 F.2d at 1050). *See also United States v. Green*, 617 F.3d 233, 247 (3d Cir. 2010) ("[A]llowing the jury to understand the circumstances surrounding the charged crime – completing the story – is a proper, non-propensity purpose under Rule 404(b)."). Indeed, evidence is, and has been, admissible under Rule 404(b) to show a relationship and criminal association between individuals. *See, e.g.*, *United States v. Mathis*, 264 F.3d 321 (3d Cir. 2001) (affirming decision that evidence of uncharged robberies was properly admitted to show witness' familiarity with the defendant and the manner in which they committed robberies).

Rule 404(b) evidence may also be offered to bolster the credibility of a witness. For example, as in *Butch*, evidence of a prior criminal relationship between a witness and the defendant will be pertinent to explain why the witness was trusted and became privy to the matters regarding which he is testifying. Similarly, in *Green*, the Court stated, "evidence concerning a witness's credibility is always relevant, because credibility is always at issue, . . . especially when the witness is testifying for the government in a criminal trial." *Id.* at 251.

Here, without any background information or context of their relationship, the jury will be forced to speculate as to how the defendant was connected to the drugs inside of the apartment, especially when he was not present there at the time of the warrant execution. However, if the jury were permitted to understand that the defendant and CS-2 had a long-

running relationship that included drug trafficking and the defendant's previous storage of methamphetamine in an ottoman at the apartment while CS-2 was present, the jury would understand the case and not be confused by the evidence. On that basis alone – avoiding jury confusion regarding the parties' background – the evidence is of great relevance and is admissible under Rule 404(b). *See Green*, 617 F.3d at 250 ("[O]ne proper purpose under Rule 404(b) is supplying helpful background information to the finder of fact. Here, evidence of [defendant's] threat was admissible as background information which completed the story of the crime. It explained why [the defendant] was under investigation, why [the witness] agreed to serve as an informant, and the references to [the victim] in their conversations.").

        As summarized above, evidence of the nature of the defendant and CS-2's relationship – even though it involved uncharged criminal activity – is therefore relevant and admissible.

        **2.   The evidence is admissible to prove the defendant's knowledge and intent.**

CS-2's testimony about his and the defendant's pre-existing relationship before February 2, 2022 would show that the defendant knew about the methamphetamine and money inside of the Apartment. For Count One, the government must prove that the defendant knew that he possessed methamphetamine concealed inside the ottoman and that he intended to distribute it. In *United States v. Boone*, 279 F.3d 163 (3d Cir. 2002), the Court addressed a situation where a defendant claimed that he did not know what was in the package he carried, and the government sought to offer proof of prior drug dealing by that defendant to prove his knowledge. The Court held that the evidence was offered for a proper purpose and not to show mere propensity to commit a crime: "The government correctly respond[ed] that evidence of one's familiarity with the subterfuge and concealment inherent in drug-trafficking was relevant to the issue of whether

[the defendant] may have believed the bag contained contraband other than cocaine." *Id.* at 187. *See also United States v. Vega*, 285 F.3d 256, 261 (3d Cir. 2002) (holding that evidence of involvement in prior drug conspiracy was admissible to prove defendant's knowledge of later conspiracy and his relationship with a co-conspirator). The government must also prove that the defendant had knowledge of the firearm in the nightstand in the bedroom of the Apartment and, as to Count Four, that the firearm was possessed in furtherance of a drug trafficking crime. Concealed inside that same nightstand was the money the FBI provided to CS-2 to purchase 5 pounds of methamphetamine on January 19, 2022. Aside from circumstantial evidence surrounding the defendant's presence at the Apartment the night before the warrant execution, CS-2's testimony provides direct evidence speaking to the defendant's knowledge of the money and methamphetamine inside the Apartment, and that the firearm was stored next to the money that CS-2 gave to the defendant to purchase methamphetamine.

Therefore, in order for the government to prove the "knowledge" and "intent" elements for Counts One, Three, and Four, as well as to rebut defenses and establish the credibility of CS-2, the testimony about the defendant's prior bad acts should be admissible under Rule 404(b).

D. **Rule 403 – The Probative Value is Not Substantially Outweighed by the Potential for Unfair Prejudice**

Federal Rule of Evidence 403 permits a district court to exclude relevant evidence only if the evidence's probative value is *substantially* outweighed by the danger of *unfair* prejudice. Fed. R. Evid. 403 (emphasis added). "Unfair prejudice" refers to an undue tendency to suggest a decision on an improper basis. *See* Fed. R. Evid. 403, Advisory Committee Notes. Rule 403 does not entail a simple "balancing." The rule makes clear that exclusion is allowed only if the prejudicial impact "substantially outweighs" the probative value. In part, this means

that the test is almost surely not met where the probative value of the evidence is itself high. The remedy of exclusion is "extraordinary" and should be applied sparingly, while the balance should be struck in favor of admissibility. *See United States v. Terzado-Madruga*, 897 F.2d 1099, 1117 (11th Cir. 1990); *accord*, *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980); *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978). The application of the Rule "does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002) (internal citation omitted).

Further, any prejudice may be ameliorated through a jury instruction which, as the Third Circuit has stated, minimizes any potential for unfair prejudice and ensures that the jury does not consider the evidence for an improper purpose. *See, e.g.*, *United States v. Lee*, 612 F.3d 170, 191 (3d Cir. 2010); *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996). Finally, it may be observed that the Third Circuit has allowed the admission under Rule 404(b) even of information which in all likelihood was far more prejudicial than that involved in the current case at issue. For example, in *Green*, the defendant was charged with attempted possession of a kilogram of cocaine with intent to distribute. The Court held that the district court did not abuse its discretion in admitting evidence regarding the defendant's efforts to acquire dynamite in order to kill an undercover officer involved in an earlier case, because the evidence helped explain the conversations between the defendant and a cooperator, and to explain the cooperator's motives in assisting law enforcement. The Court added, "We note that we have rejected Rule 403 challenges to the admission of evidence that was just as prejudicial as the evidence at issue here.  *See, e.g.*, *United States v. Scarfo*, 850 F.2d 1015, 1020 (3d Cir. 1988) (evidence of uncharged murders);

13

*United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir.1996) (evidence of uncharged rape). *See also*
*United States v. Daraio*, 445 F.3d 253, 264-66 (3d Cir. 2006) (holding that evidence of
defendant's uncharged tax evasion was relevant and admissible to show defendant's intent in
failing to pay over payroll taxes).

In this case, any prejudice does not substantially outweigh the highly probative value of
CS-2's testimony. Any risk that the jury will impermissibly consider the evidence as proof of the
defendant's propensity to commit crimes can be mitigated by the Court's limiting instruction to
the jury. *Green*, 617 F.3d at 252. If requested, the government will provide a proposed limiting
instruction concerning the purposes for which the evidence may be used. Thus, all prongs for
admission under Rule 404(b) have been met.

Moreover, any defense that is asserted will likely involve impeaching the credibility of
CS-2. The background information about the prior relationship and bad acts will provide a basis
for the jury to fully evaluate his credibility. The value of the evidence, therefore, is great and is
not substantially outweighed by a risk of undue prejudice. Accordingly, analyzing the evidence
under Rule 404(b), the defendant's prior bad acts are admissible.

## III.   <u>ADDITIONAL EVIDENCE</u>

The government has set forth with particularity the evidence that it seeks to introduce as
admissible under Rule 404(b) of the Federal Rules of Evidence. The government further
respectfully requests that it be permitted to supplement this particular request with additional
requests if the government comes to believe during the course of its trial preparation that such
additional evidence would be useful to the jury in its determination of a fact material to a
disputed element, or should the government newly learn of such additional evidence.

14

IV.     **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that this Court

admit the anticipated testimony of CS-2 because it completes the narrative and avoids jury

confusion, provides critical context for the relationship between CS-2 and the defendant, and is

probative of the defendant's knowledge and intent with respect to the drug and firearm-related

charges in the indictment. The government submits that this evidence is intrinsic to the

commission of the crimes; and it is also permissible under Fed. R. Evid. 404(b), while its

probative value is not substantially outweighed by the danger of unfair prejudice.

        Respectfully Submitted,

        JACQUELINE C. ROMERO
        United States Attorney

        */s/   Justin Ashenfelter*
        JUSTIN ASHENFELTER
        J. JEANETTE KANG
        Assistant United States Attorneys

Date: November 10, 2022

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the Government's Motion *in Limine* to Admit Evidence As Intrinsic or Under Federal Rule of Evidence 404(b) has been served by me, by email, upon defense counsel:

Gary S. Silver, Esq.
lawofficesofgaryssilver@comcast.net

*/s/   Justin Ashenfelter*
JUSTIN ASHENFELTER
Assistant United States Attorney

Date: November 10, 2022

16